1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEFFREY DREVDAHL,                        No.  2:20-cv-0859 DB

12              Plaintiff,

13        v.                                  ORDER

14   CITY OF FAIRFIELD, municipal
     corporation; J. WILLIAMS, in his
15   individual capacity and as a police officer
     for the Fairfield Police Department,
16

17              Defendants.

18

19        Each of the parties in the above-captioned case has consented to proceed before a United

20   States Magistrate Judge.  See U.S.C. § 636(c).  Accordingly, this matter has been reassigned to

21   the undersigned for all purposes.  Pending before the Court are plaintiff's partial motion for

22   summary judgment and defendants' motion for summary judgment.  (ECF Nos. 22 & 32.)  For

23   the reasons explained below the motions are denied.

24                        **PROCEDURAL BACKGROUND**

25        Plaintiff, proceeding through counsel, commenced this action on April 27, 2020, by filing

26   a complaint and paying the required filing fee.  (ECF No. 1.)  The complaint alleges that on

27   September 7, 2019, plaintiff was walking back from a laundry mat on North Texas Street in

28   Fairfield, California and noticed defendant Fairfield Police Officer J. Williams' police car was

                                      1

1    illegally parked.  (Compl. (ECF No. 1.) at 4.[1])  Defendant Williams observed plaintiff's conduct

2    and inquired about it.  (Id.)  After plaintiff explained his actions defendant Williams accused

3    plaintiff of loitering and ordered plaintiff to leave the parking lot.  (Id.)  Plaintiff explained that he

4    was patronizing the laundry mat.  (Id.)

5         Defendant Williams then drove his vehicle towards plaintiff and opened the door, striking

6    plaintiff.  (Id.)  After exiting the vehicle, defendant Williams slapped plaintiff's phone from his

7    hand, "choke-slammed" plaintiff on the concrete, and put his full body weight on top of plaintiff.

8    (Id.)  This interaction was recorded on plaintiff's phone.  (Id.)  As a result of defendant's actions,

9    plaintiff suffered physical and emotional injuries.  (Id. at 5.)  Pursuant to these allegations the

10   complaint alleges claims for excessive force, violation of California Civil Code § 52.1, battery,

11   negligence, false imprisonment, and false arrest.  (Id. at 5-10.)

12        Defendants Williams and the City of Fairfield filed an answer on July 23, 2020.  (ECF No.

13   9.)  Thereafter, the parties filed cross-motions for summary judgment, which were fully briefed

14   and taken under submission.  (ECF Nos. 22, 26, 29, 30, 32, 41-43.)

15                    **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS[2]**

16        Defendants' statement of undisputed facts is supported by citation to declarations and

17   video exhibits.  According to defendants' statement of undisputed facts on September 7, 2019, at

18   approximately 8:00 or 9:00 a.m., defendant Williams was conducting a security check at the

19   business complex located at 1972 North Texas Street in Fairfield.  Due to issues with loitering the

20   property owner requested police enforcement of the law against trespassing at the property.

21   Defendant Williams parked his vehicle "such that it was not fully within the white lines of the

22   marked parking stall."  (Defs.' SUDF (ECF No. 32-6) 1, 5, 18.[3])

23   ////

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] Plaintiff's motion for summary judgment is also supported by a statement of undisputed facts which are consistent with the allegations found in the complaint recounted above and is supported by evidence.  (ECF No. 22-7.)

[3] Citations here are to the specific numbered undisputed fact asserted.

1    While seated in the driver's seat, defendant Williams noticed plaintiff walk in front of

2  defendant's vehicle while pointing a phone camera at defendant.  After walking around

3  defendant's vehicle, plaintiff stopped on the right rear passenger side.  After "20 seconds"

4  defendant backed the "vehicle away so that he could turn to address Plaintiff."  After "30 to 40

5  seconds" defendant "backed up his vehicle, drove forward towards Plaintiff's location and told

6  him, 'Don't loiter on this property, okay?'"  (Defs.' SUDF (ECF No. 32-6) 24, 28, 29, 30.)

7    Plaintiff responded by saying "I'm gonna stand right fucking here!" as he moved towards

8  defendant Williams' open window.  Defendant Williams opened his car door to exit his vehicle

9  and "the door hit Plaintiff when Williams opened it."  Plaintiff then yelled, "Don't fucking hit

10  me!" and defendant Williams instructed plaintiff to sit down.  Plaintiff refused to sit down and

11  said, "No, I'm taking off."  Defendant Williams again instructed plaintiff to sit on the ground.

12  Plaintiff informed defendant Williams that Williams' vehicle was not in park and was rolling.

13  Defendant Williams reached in and put the vehicle in park.  (Defs.' SUDF (ECF No. 32-6) 33, 35,

14  37, 39, 40.)

15    Plaintiff began walking towards defendant Williams while demanding to know what crime

16  plaintiff had committed.  Defendant Williams knew "that the laundromat was located at a separate

17  property down the street."  After plaintiff put his camera in defendant Williams' face, defendant

18  Williams said "'You don't get in my face like that' and grabbed Plaintiff's right wrist[.]"

19  Plaintiff "pulled away" and defendant Williams "pulled [plaintiff] to the ground."  With plaintiff

20  thrashing around and screaming that "he had laundry," defendant Williams "straddled Plaintiff's

21  buttocks area by placing a knee on each side of Plaintiff's hip area[.]"  Plaintiff eventually

22  complied with defendant Williams' demand that plaintiff put his hands behind his back.  Plaintiff

23  moved to a seated position and defendant Williams "moved Plaintiff back down to a prone

24  position on the ground."  (Defs.' SUDF (ECF No. 32-6) 41, 43, 46, 48, 49.)

25    After determining that plaintiff was unarmed defendant Williams arrested plaintiff "for

26  failing to obey a law enforcement officer's commands and physically resisting in violation of

27  Penal Code § 148."  "The DA declined to file charges against Plaintiff as the charges were

28  ////

3

'Deferred for revocation of parole/probation, [in] Riverside County."  (Defs.' SUDF (ECF No. 32-6) 53, 60.)

## OPPOSITIONS

Local Rule 260(b) rule requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact.  Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial.  Here, each party has submitted an opposition that complies with the Local Rule.  (ECF Nos. 26 & 41.)  Rather that reproduce each parties' opposition, the court will discuss those oppositions below if necessary to analyze the cross-motions for summary judgment.

## LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In

such a circumstance, summary judgment should be granted, "so long as whatever is before the

district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id.

at 323.

    If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

    In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (citations omitted).

    "In evaluating the evidence to determine whether there is a genuine issue of fact," the

court draws "all reasonable inferences supported by the evidence in favor of the non-moving

party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

the opposing party's obligation to produce a factual predicate from which the inference may be

drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

1   *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

2   party "must do more than simply show that there is some metaphysical doubt as to the material

3   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

4   nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation

5   omitted).

6   　　　"When, as here, the parties have filed cross-motions for summary judgment, the Court

7   'review[s] each motion for summary judgment separately, giving the nonmoving party for each

8   motion the benefit of all reasonable inferences.'"  <u>Campbell v. Feld Entertainment, Inc.</u>, 75

9   F.Supp.3d 1193, 1203 (N.D. Cal. 2014) (quoting <u>Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cnty.</u>

10  <u>Sheriff Dep't</u>, 533 F.3d 780, 786 (9th Cir. 2008)).  In conducting this review the Court "must

11  consider each party's evidence, regardless under which motion the evidence is offered."  <u>Las</u>

12  <u>Vegas Sands, LLC v. Nehme</u>, 632 F.3d 526, 532 (9th Cir. 2011).

13  **ANALYSIS**[4]

14  **I.    Excessive Force**

15  　　　A claim that a law enforcement officer used excessive force during the course of an arrest

16  is analyzed under the Fourth Amendment and an objective reasonableness standard.  <u>See</u> <u>Graham</u>

17  <u>v. Connor</u>, 490 U.S. 386, 395 (1989).  "'In assessing the objective reasonableness of a particular

18  use of force, we consider: (1) the severity of the intrusion on the individual's Fourth Amendment

19  rights by evaluating the type and amount of force inflicted, (2) the government's interest in the

20  use of force, and (3) the balance between the gravity of the intrusion on the individual and the

21  government's need for that intrusion.'"  <u>Rice v. Morehouse</u>, 989 F.3d 1112, 1121 (9th Cir. 2021)

22  (quoting <u>Lowry v. City of San Diego</u>, 858 F.3d 1248, 1256 (9th Cir. 2017)).

23  　　　Under this standard, "'[t]he force which [i]s applied must be balanced against the need for

24  that force: it is the need for force which is at the heart of the <u>Graham</u> factors.'"  <u>Liston v. County</u>

25  <u>of Riverside</u>, 120 F.3d 965, 976 (9th Cir. 1997) (quoting <u>Alexander v. City and County of San</u>

26  <u>Francisco</u>, 29 F.3d 1355, 1367 (9th Cir. 1994)).  "Force is excessive when it is greater than is

27  ───────────────

28  [4] For purposes of clarity and efficiency the Court has reordered and combined some of the claims found in plaintiff's complaint.

1   reasonable under the circumstances." <u>Santos v. Gates</u>, 287 F.3d 846, 854 (9th Cir. 2002) (citing

2   <u>Graham</u>, 490 U.S. 386).

3        Here, the complaint alleges that defendant Williams "had no cause to strike or choke slam

4   Plaintiff to the ground." (Compl. (ECF No. 1) at 5.)  The parties' motions for summary judgment

5   are supported by evidence offering disputed factual contentions consistent with their conflicting

6   versions of the events recounted above.  Under such circumstances the Court is reminded that

7   "'summary judgment should be granted sparingly in excessive force cases.'" <u>C.V. by and</u>

8   <u>through Villegas v. City of Anaheim</u>, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting <u>Gonzalez v.</u>

9   <u>City of Anaheim</u>, 747 F.3d 789, 795 (9th Cir. 2014)).  This is "'[b]ecause the excessive force

10   inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw

11   inferences therefrom[.]" <u>Glenn v. Washington County</u>, 673 F.3d 864, 871 (9th Cir. 2011)

12   (quoting <u>Smith v. City of Hemet</u>, 394 F.3d 689, 701 (9th Cir. 2005) (en banc)).

13        However, "[w]hen opposing parties tell two different stories, one of which is blatantly

14   contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

15   that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v.</u>

16   <u>Harris</u>, 550 U.S. 372, 380 (2007); <u>see also</u> <u>Vos v. City of Newport Beach</u>, 892 F.3d 1024, 1028

17   (9th Cir. 2018) ("The record is viewed in the light most favorable to the nonmovants . . . so long

18   as their version of the facts is not blatantly contradicted by the video evidence.").  But, "[t]he

19   mere existence of video footage of the incident does not foreclose a genuine factual dispute as to

20   the reasonable inferences that can be drawn from that footage." <u>Vos</u>, 892 F.3d at 1028.

21        The evidence in this action includes video recordings from plaintiff's phone and from

22   defendant Williams' bodycam.  (ECF No. 22-2; ECF No. 32-4; ECF No. 32-5.)  In moving for

23   summary judgment defendants assert that "Plaintiff's version of events is 'so utterly discredited'

24   by the video evidence and he should not be permitted to rely on such visible fiction to defeat

25   summary judgment." (Defs. MSJ (ECF No. 32) at 18.)  The Court does not agree.

26        Review of the video evidence supports two conclusions.  First, there is no video depicting

27   the events after defendant Williams grabs plaintiff's wrist and a struggle ensues.  It cannot be

28   said, therefore, that the video evidence contradicts either party's version of those events.  Second,

1  as to the events leading up to defendant Williams' use of force, the video evidence is consistent

2  with, and supportive of, the complaint's allegations.

3      In this regard, the video evidence shows plaintiff recording defendant's vehicle, which is

4  parked well outside the boundaries of the designated parking space, while circling the vehicle.

5  After a matter of seconds, defendant Williams moves the vehicle so that plaintiff is on the driver's

6  side and closer to defendant Williams.  The parties begin speaking to each other, with plaintiff

7  using a raised voice and profanity.  Eventually defendant Williams opens the door of the vehicle,

8  and the door strikes plaintiff.  The door is opened in such a manner and with such force that it

9  could be said that defendant Williams "threw open" the door.  And it appears from the video that

10  defendant Williams was aware that the door would strike plaintiff.

11      After exiting the vehicle, the parties' verbal interaction continues until defendant Williams

12  grabs plaintiff's right wrist just below plaintiff's hand which is holding the cell phone.

13  Immediately prior to defendant Williams grabbing plaintiff's wrist, plaintiff appears to be

14  standing stationary while looking and pointing away from defendant Williams.

15      Although it is clear from the video evidence that the parties were having a heated

16  disagreement, it is undisputed that the alleged crime at issue—loitering/trespassing—was minor

17  in nature.  Moreover, in the Court's view it does not appear from the video evidence that plaintiff

18  posed a threat to defendant Williams' safety.  Nor does it appear that plaintiff was actively

19  resisting or attempting to flee.  See Graham, 490 U.S. at 396 ("proper application requires careful

20  attention to the facts and circumstances of each particular case, including the severity of the crime

21  at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

22  whether he is actively resisting arrest or attempting to evade arrest by flight").

23      Upon viewing the events depicted in the video a reasonable jury could conclude that

24  defendant Williams intentionally struck plaintiff with the vehicle's door for the purpose of

25  causing injury.  A reasonable jury could also conclude that under the circumstances at issue

26  defendant Williams' actions in striking plaintiff with the door and/or grabbing plaintiff's wrist

27  constituted excessive force.

28  ////

1    Nonetheless, "a court should not discount the nonmoving party's story unless the video

2    evidence provides so much clarity that a reasonable jury could not believe his account."  Darden

3    v. City of Fort Worth, Texas, 880 F.3d 722, 730 (5th Cir. 2018).  Cf. Morton v. Kirkwood, 707

4    F.3d 1276, 1284 (11th Cir. 2013) ("where an accurate video recording completely and clearly

5    contradicts a party's testimony, that testimony becomes incredible").  While the video evidence

6    does appear to support plaintiff's version of events the Court cannot say that the video evidence

7    so blatantly contradicts defendant Williams' version that no reasonable jury could believe it.

8    And, as acknowledged above, the video evidence only depicts a fraction of the use of force at

9    issue.

10    In the absence of video evidence that blatantly contradicts a party's version of events "the

11    judge's function is not to weigh the evidence and determine the truth of the matter but to

12    determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S.

13    242, 249 (1986); see also Glenn v. Washington County, 673 F.3d 864, 878 (9th Cir. 2011) ("We

14    recognize that the officers have offered evidence that could support a verdict in their favor.  A

15    jury could view the facts as the district court did, and likewise reach the conclusion that the

16    officers' use of force was reasonable.  But on summary judgment, the district court is not

17    permitted to act as a factfinder.  The circumstances of this case can be viewed in various ways,

18    and a jury should have the opportunity to assess the reasonableness of the force used after hearing

19    all the evidence.").

20    The Court, therefore, finds that there is a genuine issue for trial and that a jury is required

21    to resolve the parties' disputed factual contentions.  Accordingly, each party's motion for

22    summary judgment as to this claim is denied.

23    **II.     Unlawful Detention/ False Arrest**

24    The Fourth Amendment protects persons against "unreasonable searches and seizures."

25    U.S. Const. amend. IV.  However, "'[t]he Fourth Amendment permits brief investigative stops . .

26    . when a law enforcement officer has a particularized and objective basis for suspecting the

27    particular person stopped of criminal activity.'"  U.S. v. Edwards, 761 F.3d 977, 982 (9th Cir.

28    2014) (quoting Navarette v. California, 134 S. Ct. 1683, 1687 (2014)).  "In order to satisfy the

1    Fourth Amendment's strictures, an investigatory stop by the police may be made only if the

2    officer in question has 'a reasonable suspicion supported by articulable facts that criminal activity

3    may be afoot[.]'" U.S. v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (quoting United

4    States v. Sokolow, 490 U.S. 1, 7 (1989)).

5         Moreover, "'an arrest without probable cause violates the Fourth Amendment and gives

6    rise to a claim for damages under § 1983.'" Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th

7    Cir. 2001) (quoting Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988)).  "Probable

8    cause exists when officers have knowledge or reasonably trustworthy information sufficient to

9    lead a person of reasonable caution to believe that an offense has been or is being committed by

10   the person being arrested."  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing

11   Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "Alternatively, this court has defined probable cause as

12   follows: when 'under the totality of circumstances known to the arresting officers, a prudent

13   person would have concluded that there was a fair probability that [the defendant] had committed

14   a crime.'"  Id. (citing United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986)) (alteration in

15   original); see also Crowe v. County of San Diego, 608 F.3d 406, 432 (9th Cir. 2010) ("In

16   determining whether there was probable cause to arrest, we look to the totality of circumstances

17   known to the arresting officers, to determine if a prudent person would have concluded there was

18   a fair probability that the defendant had committed a crime.").

19        "'While conclusive evidence of guilt is of course not necessary under this standard to

20   establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are

21   not enough.'"  Torres v. City of Los Angeles, 548 F.3d 1197, 1206-07 (9th Cir. 2008) (quoting

22   Lopez, 482 F.3d at 1072).  "Probable cause is lacking if the circumstances relied on are

23   susceptible to a variety of credible interpretations not necessarily compatible with nefarious

24   activities."  Gasho v. United States, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted).

25   "Although 'police may rely on the totality of facts available to them in establishing probable

26   cause, they also may not disregard facts tending to dissipate probable cause.'"  Crowe, 608 F.3d

27   at 433 (quoting United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005)).

28   ////

Here, defendants assert that "[t]he undisputed evidence establishes that reasonable suspicion existed to detain Plaintiff for loitering or trespass under the totality of the circumstances." (Defs.' MSJ (ECF No. 32) at 20.)  Again, the Court disagrees.  In this regard, defendant Williams "first noticed" plaintiff as plaintiff was recording defendant Williams on a cellphone. (Williams' Depo. at 42.)  According to defendant Williams, a person has a "right to record law enforcement activity[.]"  (Id.)

Defendant Williams also stated that he observed plaintiff for "a couple of minutes," "[w]alking on the property aimlessly," when defendant Williams decided to detain plaintiff for "trespassing." (Williams' Depo at 44-45.)  Prior to detaining plaintiff it does not appear that defendant Williams asked plaintiff any questions in support of an investigation into plaintiff's purpose on the property.  See Kansas v. Glover, 140 S. Ct. 1183, 1189 (2020) ("Nothing in our Fourth Amendment precedent supports the notion that, in determining whether reasonable suspicion exists, an officer can draw inferences based on knowledge gained only through law enforcement training and experience.  We have repeatedly recognized the opposite.").

Moreover, from the video evidence submitted it appears that the parties' verbal interaction begins with defendant Williams accusing plaintiff of loitering.  Plaintiff tells defendant Williams to "kick rocks," and states "I'm going to stand right fucking here."  "An individual's temporary refusal to comply with an officer's commands is not in itself a valid basis for an arrest."  Sialoi v. City of San Diego, 823 F.3d 1223, 1234 (9th Cir. 2016).  Indeed, the Supreme Court has "consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."  Florida v. Bostick, 501 U.S. 429, 437 (1991); see also Florida v. Royer, 460 U.S. 491, 497-98 (1983) ("The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way."); Mackinney v. Nielsen, 69 F.3d 1002, 1006 (1995) ("It is well established under California law that even an outright refusal to cooperate with police officers cannot create adequate grounds for police intrusion without more."); People v. Bower, 24 Cal.3d 638, 649 (Cal. 1979) ("this court has held that an outright refusal to cooperate with police

////

11

1  officers cannot create adequate grounds for an intrusion which would otherwise be

2  unjustifiable").

3      After defendant Williams strikes plaintiff with the door of his vehicle, and after plaintiff

4  advised defendant Williams that Williams had failed to place his vehicle in park and that the

5  vehicle was moving, plaintiff asked "what crime have I committed."  Defendant Williams accuses

6  plaintiff of loitering and plaintiff responds, "I've got laundry."  Within seconds thereafter,

7  defendant Williams grabs plaintiff's wrist, and a struggle ensues.  At that moment, it is entirely

8  unclear what, if any, articulable facts supported defendant Williams' decision to detain and/or

9  arrest plaintiff.  Thus, based on the evidence before the Court a reasonable jury could conclude

10  that defendant Williams lacked probable cause to detain and/or arrest plaintiff.

11      The video evidence does establish that prior to defendant Williams' use of force, and

12  plaintiff's detention and arrest, that plaintiff was defiant, using offensive language and a loud

13  tone.  However,

> [i]f there is one irreducible minimum in our Fourth Amendment
> jurisprudence, it is that a police officer may not detain an individual
> simply on the basis of suspicion in the air.  No matter how peculiar,
> abrasive, unruly or distasteful a person's conduct may be, it cannot
> justify a police stop unless it suggests that some specific crime has
> been, or is about to be, committed, or that there is an imminent danger
> to persons or property.

18  Duran v. City of Douglas, Ariz., 904 F.2d 1372, 1378 (9th Cir. 1990).

19      Defendants also argue that "[t]he undisputed evidence . . . shows that ample probable

20  cause supported Plaintiff's arrest" for resisting arrest pursuant to California Penal Code § 148.

21  (Defs.' MSJ (ECF No. 32) at 22.)  Again, the Court disagrees.  The evidence presented calls into

22  serious question defendant Williams' decision to detain, let alone arrest, plaintiff for trespassing.

23  "If there was no probable cause to arrest [plaintiff] for trespassing in the first place, it makes no

24  difference for present purposes if he resisted arrest."  Blankenhorn v. City of Orange, 485 F.3d

25  463, 472 (9th Cir. 2007); see also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 920

26  (9th Cir. 2001) ("If the officers could not lawfully arrest [a person] for battery, the officers could

27  also not lawfully arrest [the person] for resisting arrest.").

28  ////

1    In this regard, "[i]n California, the lawfulness of the officer's conduct is an essential

2    element of the offense of [§ 148]."  Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en

3    banc).  Thus, § 148 can only be violated where at the time of the offense the officer is engaged in

4    the lawful performance of his duties.  Id.; Beckway v. Deshong, 717 F.Supp.2d 908, 915 (N.D.

5    Cal. 2010); see also Maxwell v. County of San Diego, 697 F.3d 941, 951 (9th Cir. 2012)

6    ("Section 148(a) does not make it a crime, however, to resist unlawful orders."); Robinson v. City

7    of San Diego, 954 F.Supp.2d 1010, 1023 (S.D. Cal. 2013) ("Section 148 has been construed by

8    the courts as applying only to lawful arrests, because 'An officer is under no duty to make an

9    unlawful arrest.'") (quoting Jackson v. Superior Court, 98 Cal.App.2d 183, 189 (1950)).

10   Here, there is evidence from which a jury could find that defendant Williams used

11   excessive force against plaintiff, detained plaintiff without reasonable suspicion, and arrested

12   plaintiff without probable cause.  "'Under California law, an officer is not lawfully performing

13   [his] duties when [he] detains an individual without reasonable suspicion or arrests an individual

14   without probable cause.'"  Garcia v. Superior Court, 177 Cal.App.4th 803, 819 (2009) (quoting

15   Nuno v. County of San Bernardino, 58 F.Supp.2d 1127, 1134 (C.D. Cal. 1999)); see also

16   Rodriguez v. City of Modesto, 535 Fed. Appx. 643, 644 (9th Cir. 2013) ("A police officer is not

17   lawfully performing her duties if she arrests an individual without probable cause, or uses

18   unreasonable or excessive force on the individual at the time the defendant's unlawful resistance,

19   delay or obstruction is occurring."); People v. Olguin, 119 Cal.App.3d 39, 44 (1981) ("Since the

20   officer must be acting in the performance of his duty, the use of excessive force renders it

21   impossible for an arrestee to violate section 148.").

22   Nonetheless, although the evidence submitted is sufficient to defeat defendants' motion

23   for summary judgment as to this claim, it is not such that the Court can find it resolves the

24   parties' factual disputes.  Accordingly, the Court finds that a jury is required to resolve the

25   parties' differing versions of the truth at trial.  Both parties' motions for summary judgment,

26   therefore, are denied as to this claim.

27   ////

28   ////

1

**III.    Bane Act**

2          "The Bane Act prohibits any person from interfering by 'threats, intimidation or coercion .

3  . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution[.]"

4  Gregory v. City of Vallejo, 63 F.Supp.3d 1171, 1182 (E.D. Cal. 2014) (quoting Cal. Civ. Code §

5  52.1(a).  Thus, "Section 52.1 provides a cause of action for violations of a plaintiff's state or

6  federal civil rights committed by threats, intimidation, or coercion."  Reese v. Cty. of Sacramento,

7  888 F.3d 1030, 1040 (9th Cir. 2018) (citation and internal quotations omitted).

8          Defendants argue they should be granted summary judgment as to this claim because

9  plaintiff "cannot establish an underlying civil rights violation to support a § 52.1 claim."  (Defs.'

10  MSJ (ECF No. 32) at 32.)  However, above the Court has found that there are material factual

11  disputes with respect to several alleged civil rights violations.  Defendants' motion for summary

12  judgment is, therefore, denied as to this claim.[5]  See Gomez v. City of Vacaville, 483 F.Supp.3d

13  850, 869-70 (E.D. Cal. 2020) ("Because the court finds factual disputes prevent finding as a

14  matter of law that defendants did not violate plaintiff's Fourth Amendment rights, defendants'

15  motion is DENIED as to plaintiffs' Bane Act claims.").

16  **IV.    Battery**

17          "To prevail on a claim of battery under California law, a plaintiff must establish that: (1)

18  the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or

19  offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed

20  or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would

21  have been offended by the touching."  Avina v. U.S., 681 F.3d 1127, 1130-31 (9th Cir. 2012)

22  (citing Judicial Council of Cal., Civil Jury Instructions No. 1300 Cal., Civil Jury Instructions No.

23  _____

24  [5] In a similar manner, defendants argue that defendant Williams is entitled to immunity pursuant
to California Government Code § 820.2 which "immunized public employees for acts or

25  omissions resulting from the exercise of discretion."  (Defs.' MSJ (ECF No. 32) at 35.)  § 820.2,
however, "'does not shield from liability government employees who use excessive force in

26  carrying out their duties.'"  Estate of Adkins , by and through Adkins v. County of San Diego,
384 F.Supp.3d 1195, 1208 (S.D. Cal. 2019) (quoting Rodriguez v. Cty. of Los Angeles, 891 F.3d

27  776, 799 (9th Cir. 2018)).  Nor does it "apply to claims of false imprisonment or false arrest
predicated on an officer's detaining a suspect without reasonable suspicion or probable cause."

28  Liberal v. Estrada, 632 F.3d 1064, 1085 (9th Cir. 2011).

1300 ("Battery") (2012)).  Where the defendant is a police office, a plaintiff alleging a battery

claim must also establish that the officer used unreasonable force.  See Edson v. City of Anaheim,

63 Cal.App.4th 1269, 1273 (1998).

Having found that the evidence presented requires a jury to resolve disputed material facts

as to plaintiff's excessive force claim, plaintiff's battery claim likewise must proceed to trial.  See

Jaramillo v. City of San Mateo, 76 F.Supp.3d 905, 925 (N.D. Cal. 2014) ("Here . . . there are

issues of material fact as to whether the officers used reasonable force against Jaramillo.

Accordingly, the motion as to the assault and battery claim against the police officers is

DENIED.").

## V.     Negligence

"In order to prevail on a claim for common law negligence against a police officer,

Plaintiffs must show that (1) the officer owed plaintiff a duty of care; (2) the officer breached the

duty by failing 'to use such skill, prudence, and diligence as other members of the [the]

profession commonly possess and exercise,' (3) there was a 'proximate causal connection

between the [officer's] negligence conduct and the resulting injury' to the plaintiff; and (4) the

officer's negligence resulted in 'actual loss or damage' to the plaintiff."  Robinson v. City of San

Diego, 954 F.Supp.2d 1010, 1026-27 (S.D. Cal. 2013) (quoting Harris v. Smith, 157 Cal.App.3d

100, 104 (1984)).

Here, defendants' motion for summary judgment argues that they should be granted

summary judgment as to plaintiff's negligence claim because plaintiff's "detention and arrest

were supported by reasonable suspicion and probable cause, respectively, and objectively

reasonable, and the force used was objectively reasonable under the totality of the

circumstances[,]"  (Defs.' MSJ (ECF No. 32) at 34.)  As articulated above, the evidence presented

to the Court does not support that assertion.  Instead, the evidence is such that there is a genuine

issue of fact with respect to this claim.

The parties' motions for summary judgment are, therefore, denied as to this claim.  See

Eklund v. County of Orange, CASE NO. SACV 08-0099 DOC (RNBx), 2009 WL 10670621, at

////

1   *10 (C.D. Cal. May 11, 2009) ("because Plaintiff's negligence claims is premised on the same

2   alleged acts of unreasonable, excessive force . . . summary judgment must be denied").

3   **VI.    Qualified Immunity**

4          Defendants' motion for summary judgment asserts that "[e]ven if . . . Plaintiff could

5   show" that defendant Williams "violated his civil rights," defendant Williams is nonetheless

6   "entitled to qualified immunity."  (Defs.' MSJ (ECF No. 32) at 29.)  "Qualified immunity protects

7   government officials from civil damages 'insofar as their conduct does not violate clearly

8   established statutory or constitutional rights of which a reasonable person would have known.'"

9   Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting Harlow v. Fitzgerald, 457

10  U.S. 800, 818 (1982)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) ("Qualified

11  immunity shields government officials from civil damages liability unless the official violated a

12  statutory or constitutional right that was clearly established at the time of the challenged

13  conduct.'").  When a court is presented with a qualified immunity defense, the central questions

14  for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff,

15  demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2)

16  whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

17         The United States Supreme Court has held that "while the sequence set forth there is often

18  appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223,

19  236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a

20  statutory or constitutional violation, "there is no necessity for further inquiries concerning

21  qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at

22  issue was not clearly established at the time of the defendant's alleged misconduct, the court may

23  end further inquiries concerning qualified immunity at that point without determining whether the

24  allegations in fact make out a statutory or constitutional violation.  Pearson, 555 U.S. 236-42.

25         "A government official's conduct violate[s] clearly established law when, at the time of

26  the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

27  official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd,

28  563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  In this

1   regard, "existing precedent must have placed the statutory or constitutional question beyond

2   debate." Id.; see also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry

3   focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the

4   officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202).

5       "The dispositive question is 'whether the violative nature of particular conduct is clearly

6   established.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742.)

7   The inquiry must be undertaken in light of the specific context of the particular case. Saucier,

8   533 U.S. at 201. "In a nutshell, according to the Supreme Court, state officials are entitled to

9   qualified immunity so long as 'none of our precedents 'squarely governs' the facts here,' meaning

10   that 'we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the

11   law' would have . . . acted as the officials did.'" Hamby v. Hammond, 821 F.3d 1085, 1091 (9th

12   Cir. 2016) (quoting Mullenix, 136 S. Ct. at 310.) Defendant, "has the burden of pleading and

13   proving" that he is entitled to qualified immunity. Frudden v. Pilling, 877 F.3d 821, 831 (9th Cir.

14   2017) (citing Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)).

15       "[I]f an officer makes an arrest without probable cause, he or she may be entitled to

16   qualified immunity as long as it is reasonably arguable that there was probable cause for the

17   arrest." Reed v. Lieurance, 863 F.3d 1196, 1204-05 (9th Cir. 2017); see also Rosenbaum v.

18   Washoe County, 663 F.3d 1071, 1078 (9th Cir. 2011) ("Framing the reasonableness question

19   somewhat differently, the question in determining whether qualified immunity applies is whether

20   all reasonable officers would agree that there was no probable cause in this instance.").

21       Here, the parties have submitted evidence from which a reasonable jury could find that

22   defendant Williams violated one or more of plaintiff's constitutional rights through the use of

23   excessive force, unlawful detention, and/or false arrest. Moreover, the violative nature of the

24   particular conduct in this case has been clearly established for some length of time. See Illinois v.

25   Wardlow, 528 U.S. 119, 125 (2000) (person has "right to ignore the police and go about his

26   business"); Felix v. McCarthy, 939 F.2d 699, 701-02 (9th Cir. 1991) (since 1985 law would have

27   put reasonable officer on notice that an "unprovoked and unjustified attack" violated clearly

28   established constitutional rights); Duran, 904 F.2d at 1376-77 ("In the absence of a valid warrant,

17

1    the police may generally not stop and detain an individual for investigation absent a reasonable

2    belief that criminal or otherwise dangerous activity is afoot."); <u>Amili v. City of Tukwila</u>, 31

3    F.Supp.3d 1274, 1281 (W.D. Wash. 2014) ("Courts are unequivocal—and have been for

4    decades—that there must be a particularized and objective basis for suspecting legal

5    wrongdoing.").

6          Accordingly, defendants' motion for summary judgment on grounds of qualified

7    immunity is denied.

8                                        CONCLUSION

9          For the reasons stated above, IT IS HEREBY ORDERED that:

10         1. Plaintiff's July 6, 2021 motion for partial summary judgment (ECF No. 22) is denied;

11         2. Defendants' September 22, 2021 motion for summary judgment (ECF No. 32) is

12   denied; and

13         3. Within 21 days of the date of this order each party shall file a statement addressing

14   whether this matter should be set for a settlement conference before another magistrate judge or

15   proceed directly to a final pretrial conference.

16   Dated:  February 2, 2022

17

18                                                    _____

19                                                    DEBORAH BARNES
                                                      UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

27   DLB:6
     DB\orders\orders.consent\drevdahl0859.msj.ord
28

18